Henry, Bruce R., J.
Before the Court in this insurance coverage dispute is the motion of the defendant for summary judgment. The parties have submitted a Stipulation of Facts and have made written and oral arguments in support of their respective positions. For the reasons which follow, the defendant’s motion is DENIED and I find that the plaintiffs claimed loss is covered under the applicable policy issued by the defendant.
Stipulated Facts
The parties have submitted an agreed-upon statement of facts, which I have supplemented with some additional factual information as to which there is no dispute. The undisputed facts are as follows:
Cambridge Mutual Fire Insurance Company (Cambridge) issued Policy No. HP 199-64-49 (the policy), effective May 22, 2003 to May 22, 2004, insuring the interests of Weyman I. Lundquist (Lundquist) in property at 81 Kendall Road, Jefferson, Massachusetts (the property) against loss and damage pursuant to its terms and conditions. Cambridge had provided similar coverage to Lundquist for many years under similar policies since 1998.
In or about July of 1998, Cambridge conducted an exterior inspection of the property which indicated that the house was in very good condition.
In July of 2003, Lundquist notified Cambridge of property damage which he believed was covered by the policy.
Cambridge, through an independent insurance adjuster, Crawford & Company, engaged Fred E. Paul, III, P.E. of George Slack & Pritzker, registered professional engineers, to conduct an inspection to determine the probable cause of the damage, which included displacement of a foundation wall.
Mr. Paul reported that the north and south sides of the property’s foundation are where the damage is most prevalent. The foundation walls in those areas are made up of concrete masonry units (CMUs) or blocks. The lower rows of CMUs are twelve inches wide. They are topped with rows of eight-inch-wide blocks. Mr. Paul noted that the lower CMU blocks on the north foundation wall were bowed or curved inward on part of the wall. The upper rows of the north foundation wall were leaning or tilting outward. There were openings between rows of blocks. The movement of tire top blocks appeared to have occurred recently, as there was no dirt or dust or cobwebs noted in the openings. The lower part of the north foundation wall was cracked due to the external forces of the soil materials against the outside of the wall. The soil has exerted an inward force on the wall since it was originally built.
There was no concrete or sand or other materials in the voids or cavities of the CMUs; nor were there any reinforcing rods in those cavities. The lack of fill in those cavities is one of the causes of the failure *402 of the foundation. The lack of fill allows the blocks the ability to move. The external pressure of the soil has been continual and it finally overcame the bonding of the mortar between the blocks, allowing the inward movement of the lower rows of blocks. The upper part of the wall pivoted outward as the lower wall was pushed inward.
The east wall showed some cracking around the mortar joints of many of the CMUs. The wall was not bowed in either direction.
The south wall showed movements similar to the north wall; that is, the lower blocks are bowed inward, while the upper rows are tilting outward. The force of the soil against the outside of the lower walls has moved the blocks. The movement of this wall is not new, as there is dirt, dust, debris, and cobwebs in the openings between the rows. The floor joists on this end of the house slope downward from the center of the house to the outer side.
Mr. Paul is of the opinion, and his opinion is unchallenged, that the movement of the lower parts of the foundation walls is due to lateral forces of the soil on the wall. The unfilled voids or cavities in the CMUs aided in the wall movement. At the time that the house was built it was common practice to leave the voids unfilled. The lateral forces continued until the mortar joining the CMUs failed. The south wall failed first, over a number of years. The walls will continue to fail unless they are shored up.
The causes of the losses claimed by the plaintiff are the lateral forces of the soil on the foundation walls and the unfilled voids or cavities in the CMUs, which aided in the wall movement.
After the inspection was done, Crawford & Company informed Lundquist on December 15, 2003, that the loss was not covered by the policy. Citing provisions of the policy, the property adjuster noted that the policy does not cover losses occasioned by “Earth Movement, meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting . . .” She also noted that the policy does not cover losses to property caused by “Faulty, inadequate or defective: ... (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance
Cambridge has not paid for any repair or replacement work on the property.
DISCUSSION
Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues of material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating affirmatively the absence of a triable issue, and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). All evidence must be viewed in the light most favorable to the non-moving party. Williams v. Hartman, 413 Mass. 398, 401 (1992).
Earth Movement Exclusion
The policy specifically excludes coverage for losses caused directly or indirectly by “earth movement,” which is defined in the policy as “meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting . . .” (Policy, p. 8 of 18.) The forces described in Mr. Paul’s expert report do not meet any part of that definition. In describing the forces which he says caused the problems with the foundation, Paul states in his report that cracks in the north foundation wall were “due to the external forces of the soil materials against the outside of the wall.” He goes on to state that “(t]he soil that is against the wall is and has been exerting an inward force on the wall since the wall was originally built . . . thus the external forces have been continual.” He further opines that “the pressure of the soil finally overcame the bonding of the mortar . . . [allowing] inward movement of the lower wall.” He notes that the movement of the south wall of the foundation is similar to the north wall and that “the soil [is] against the outside of the lower wall is exerting an inward force” that has caused the CMUs to move. He concludes by indicating that “the movement of the foundation wall at the lower twelve-inch wide CMU walls is due to lateral forces of the soil on the wall. The unfilled voids in the CMU’s aided in the wall movement . . . The forces continued until the mortar joining the CMU’s failed.”
Those lateral forces or pressure of the soil on the foundation walls are not included within the definition of the term “earth movement” within the policy exclusions. The definition of “earth movement” contained within the exclusions clearly contemplates natural occurrences, such as earthquakes or volcanic eruptions, and the seismic impacts they may have, and the literal movement of the earth. In this case, Mr. Paul attributes the problems with the foundation to the natural pressure or force which the soil exerts on the foundation. Those problems are not due to any movement of the earth, but rather were caused by the *403 breakdown of the mortar in response to the pressure placed upon the foundation by the lateral forces of the soil.
Thus, I find that the losses claimed by the plaintiff are not within the exclusion for losses caused by “earth movement” as that term is defined in the policy.
Exclusion for Faully Workmanship or Construction
The policy specifically excludes coverage for losses caused by “Faulty, inadequate or defective:
(2) Design, specifications, workmanship, repair, construction, renovation, remodeling . . .
(3) Materials used in repair, construction, renovation or remodeling; or
(3) Maintenance . . .
In his report, Mr. Paul indicates that one of the factors contributing to the problems with the plaintiffs foundation was the lack of fill or reinforcing rods in the voids or cavities of the CMU blocks used to construct the foundation. The lack of fill allowed the blocks to move in response to the natural pressure exerted upon them by the soil on the outside of the walls. Mr. Paul states that at the time the house was built it was common practice to leave the voids or cavities in the CMUs unfilled.
The question is whether the construction of the foundation, which was in accord with the common practice at the time it was built, is faulty, inadequate, or defective, thus excluding coverage for the plaintiffs losses. The policy does not define “faulty, inadequate, or defective”; nor does it indicate what standard is to be used in determining what is faulty, inadequate, or defective. Given Mr. Paul’s statement that the house was built in accordance with the common practice at the time, I do not find that it was faulty, inadequate, or defective in design, specifications, workmanship, or construction or in the materials used. Therefore, the loss is not excluded by this provision of the policy.
Condition Precedent to Suit
The defendant asserts that the plaintiff has not met a condition precedent to his bringing of this lawsuit by not agreeing to the amount of loss or to request a reference to a panel of referees. I agree with the plaintiffs position that the decision of the defendant denying coverage precluded the application of the provision of the policy which limits the ability to bring a lawsuit.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is DENIED. Based on the stipulation of undisputed facts, I find that the plaintiffs claimed losses are not excluded by the terms of the policy and that the condition precedent to the filing of as lawsuit cited by the defendant is not applicable.
The clerk will schedule a status conference in this matter in approximately 30 days to determine what remains to be done to bring this matter to a final conclusion.